United States District Court
Southern District of Texas
FILED

APR 6 - 2007

Michael N. Milby, Clerk

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| CARLOS JAIME TORRES CARDENAS <br> Petitioner, Pro se | § <br> § <br> § <br> § |
| v. | § CIVIL ACTION NO._____ <br> § |
| ALBERTO R. GONZALEZ, Attorney General <br> of the United States of America; <br> MICHAEL CHERTOFF, Secretary of the <br> Department of Homeland Security; <br> MARK MOORE, District Director, Bureau of <br> Immigration and Customs Enforcement, <br> San Antonio District, Et. Al., <br> Respondents | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § |

**M-07 - 022**

## PETITION FOR WRIT OF HABEAS CORPUS
## UNDER 28 U.S.C. § 2241

### INTRODUCTION

COMES NOW, CARLOS JAIME TORRES-CARDENAS, (hereafter "Petitioner"), acting Pro se, and petitions this Honorable Court for a writ of habeas corpus to remedy his unlawful detention by Respondents.

### CUSTODY

1. Petitioner is currently being held in executive detention by the United States Bureau of Immigration and Customs Enforcement (hereafter "ICE"). Petitioner is presently detained at the Port Isabel Detention Center located at Los Fresnos, Texas.

### JURISDICTION

2. This Court has personal jurisdiction over Respondents ALBERTO R. GONZALEZ, Attorney General of the United States; MICHAEL CHERTOFF, Secretary of the Department of Homeland Security; and MARK MOORE, District Director for the Bureau of Immigration and Customs Enforcement, San Antonio District; (hereafter

1

"Respondents"), because Respondents can be reached by service of process. *See, e.g., Braden v. 30th Judicial Circuit of Kentucky,* 410 U.S. 484, 495 (1973).

3. This action arises under the Constitution of the United States, the Immigration & Nationality Act (INA), 8 U.S.C. § 1101 et. *seq.,* and the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et. seq.* This Court has jurisdiction pursuant to 28 USC § 2241(c)(1) & (3), art. I. § 9, cl. 2 of the United States Constitution (Suspense Clause), and 28 USC § 1331, as the petitioner is in the custody of the United States Attorney General, the United States Department of Homeland Security, and the Bureau of Immigration and Customs Enforcement, under color of laws of the United States, and such custody is in violation of the Constitution, laws, or treaties of the United States. *See e.g., Mayers v. United States Immigration and Naturalization Service,* 175 F.3d 1289, 1299 (11th Cir. 1999). This Court has authority to grant relief pursuant to 28 USC § 2241, the Administrative Procedures Act, 5 USC §§ 701-706, the Declaratory Judgement Act, 28 USC § 2201 *et. seq.,* and the All Writs Act, 28 USC § 1651.

4. Venue is proper within this court pursuant to 28 USC § 1391. Venue lies in the United States District Court for the district in which the Petitioner has been detained and from which ICE will reinstate and execute the final order of removal / deportation.

## STATEMENT OF FACTS

5. Petitioner was born on August 12, 1954, in General Teran, Nuevo Leon; Mexico. On December 5, 1955, Petitioner, then an infant and accompanying his parents, was admitted into the United States as a Legal Permanent Resident (LPR). Petitioner has been raised, educated, and has lived his entire life in the United States. (*See Petitioner's Birth Certificate; Exhibit (A).*

6. Petitioner's paternal Grandmother was a United States Citizen by birth; and by this fact, Petitioner's Father was a citizen derived through the citizenship of his Mother. (*See Petitioner's Grandmother's, JOSEFINA JIMENEZ, Certificate of Baptism, exhibit (B);*

*and Father's, ISAAC TORRES SR., Death Certificate, exhibit (C) & copy of INA 301(h) exhibit (D).*

7. Petitioner's entire immediate family: Sons, Daughter, Brothers, and Sisters are all United States citizens and all live in the United States. Petitioner's Mother is a naturalized citizen of the United States, and she too lives in the United States. Petitioner has no immediate family remaining in Mexico. Petitioner is the oldest of the children born to his parents and is the only one who was born outside the borders of the United States. Petitioner has not lived in Mexico for any extended period(s) of time, not since he was admitted into the United States as a LPR on December 5, 1955. Petitioner does not have now nor has he ever had any close ties to Mexico. (*See Petitioner's Mother's, VIRGINIA C. TORRES, Naturalization Certificate* # 12022391; *dated:* November 13, 1984, *exhibit (E)*).

8. On August 15, 1972, just after Petitioner turned 18, Petitioner voluntarily enlisted in the United States military. The United States was in a hostile conflict in Viet Nam at that time and many young men were afraid to register with the Selective Service System for possible conscription, much less enlist with the military. Many young men evaded their obligation and duty for military service by fleeing to Canada or to some other foreign country. Petitioner served 4 years on active military duty in the United States Army. While in the military, Petitioner made an inquiry with his Commanding Officer (CO), Capt. Robert Brazzel, about becoming a citizen of the United States. The CO informed the Petitioner that when he, the Petitioner, had enlisted, had raised his hand and had taken the induction oath of the United States military; the Petitioner had swore to defend the United States and the United States Constitution and by having done so, Petitioner had automatically become a United States citizen. Petitioner trusted his CO and never thought of getting any documentation as to this information and left it at that. In 1976, Petitioner was separated from the military with an Honorable Discharge. Afterward, Petitioner learned that what his CO had said to him might not have been exactly correct because, after his military service terminated, Petitioner wanted to continue to serve with the United States government and made an attempt to apply with the Civil Service

3

Commission, Petitioner was informed that to receive an application and to apply for a Civil Service position, that he had to be an American citizen. It was then that Petitioner learned that what his CO had said might have been incorrect. (*See Petitioner's* Honorable Military Discharge, DD214, *exhibit (F)*).

9. In the first part of 1977, Petitioner submitted an application for naturalization to become a United States Citizen to the then Immigration and Naturalization Service (INS) in San Francisco, California. Petitioner never received any notification confirming acceptance and or receipt of his application by the INS, nor did Petitioner receive any notices advising him of any appointments with the INS concerning his application for naturalization. Subsequently, in 1978, Petitioner submitted a second application for naturalization and had the same results as his first application. Petitioner thought his applications for naturalization had been rejected or denied and gave up all further attempts at becoming a naturalized citizen of the United States, without ever asking for any explanations as to why he was never contacted concerning his applications for naturalization.

10. In early November of 1979, Petitioner moved his Mother, Brothers, and Sisters from California to join his Father living in Houston, Texas. It was in Houston that Petitioner met his common law wife, Diana Mosqueda, and together they had 5 handsome and wonderful sons. The relationship lasted for 10 years and at the end, Petitioner was deeply depressed and saddened for having lost his family. Petitioner always tried to provide for his family to the best of his abilities and would do anything to keep his family together.

11. Regretfully, there come a time when we commit acts of desperation that we wish we could undo. The errors we've committed will be with us for the rest of our lives, no matter how hard we try to better ourselves. In May of 1992, Petitioner was arrested for simple possession of a controlled substance (marijuana) and after several court appearances; Petitioner agreed on be placed on deferred adjudicated probation. During sentencing, Petitioner requested that his probation be transferred to Hidalgo County, away from Harris County, and the Presiding Judge approved the request. But the

Petitioner's Probation Officer (PO) said he would transfer Petitioner after a short period of probation in Harris County. Many times, Petitioner requested that his PO transfer his probation to Hidalgo County, away from Houston and away from the company he used to associate with, but the PO refused to do as the Petitioner asked, and what the court had ordered. On February 6, 1994, Petitioner was arrested for constructive delivery of a controlled substance (marihuana). Petitioner was given a court-appointed attorney, who didn't even want to listen to what the Petitioner had to say. After waiting for more than 8 months in the Harris County Jail, without once speaking to his attorney concerning what really happened in his situation, Petitioner pled guilty to all the charges against him because his 'lawyer' said there was nothing he could do, which, as it turned out, was because of a conflict of interest. As a result, Petitioner learned that his court-appointed attorney was running for the Judgeship of one of the District Courts in Harris County. Petitioner was sentenced to 10 years in the Texas Department of Criminal Justice (TDC), of which the he then served 4 years at a minimum-security prison in Snyder, Texas, and was released on February 8,1998.

12. Upon the Petitioner's release from TDC in Huntsville, Texas, Petitioner was immediately taken into custody by the INS and was eventually transferred to the detention center in Houston, Texas and was subsequently taken before an Immigration Judge. On March 17,1998, after being in Immigration Detention for more than a month and after several court appearances before the Honorable Susan Yarbrough, Immigration Judge at the detention center, Petitioner was informed that he did not qualify for any type of relief. Being unable to afford legal counsel or to speak with anyone directly to receive legal advice concerning his deportation proceedings, Petitioner, reluctantly and hesitantly signed the order of his removal. Petitioner did however have an opportunity to speak with a lady from the Mexican Consulate in Houston prior to his deportation. The lady told Petitioner that Mexico welcomed its people back and that there would be no problems what-so-ever for him when he returned.

13. On March 25, 1998, Petitioner was deported and returned to Mexico. There he attempted to live a normal life and tried to fit in with the Mexican society. In his difficult

search for employment, Petitioner learned that without proof of military service for Mexico, he could not and would not be employed. Petitioner learned that because it was alleged that he was a Mexican citizen who had served in a foreign military; by having enlisted in and served in the United States military; Petitioner had committed treason against Mexico. Petitioner also learned that the punishment he faced in Mexico would be up to 5 years in a military stockade, all for doing what Petitioner believed and felt was the proper thing to do for his adopted country.

14. In the first week of August of 1998, Petitioner's Mother had triple by-pass open-heart surgery. Petitioner returned to the United States to help look after both his Mother and Father, because both parents were now in poor health and they needed full time assistance. There's a saying that goes: "when it rains, it pours" and when things go bad, they go really bad. Well, this is what happened to Petitioner's family. On November 5, 1998, while Petitioner's Mother was recovering from her operation and while Petitioner's Father was in the hospital, Petitioner's youngest brother, Oscar N. Torres, died suddenly and unexpectedly of a heart attack, at the age of 37. Then, 5 short months later, on April 13, 1999, Petitioner's Father also died, of cirrhosis of the liver. After this, Petitioner was left with the duty of looking after his ailing Mother. Apart from the triple by-pass operation, Petitioner's Mother continues to suffer from numerous other ailments that include: diabetes, high blood pressure, glaucoma, and depression. She has had a pacemaker put into her chest and has difficulties standing for any period of time; she can no longer drive a vehicle, and has very poor eye vision. Petitioner has been in charge of his Mother; to take her to her Doctor's appointments, to her church, to the pharmacy and to the grocery store. Petitioner also cooks many of his Mothers meals. She also suffers from numerous other female related ailments that she is too embarrassed about to discuss them with Petitioner. Petitioner is the person his Mother depends on most for almost everything. (*See Petitioner's Brother's, OSCAR NOEL TORRES, Death Certificate, exhibit (G); and Father's Death Certificate, exhibit (C)*).

15. On October 15, 2005, Petitioner was taken into custody by ICE and placed in Executive Detention for returning to the United States without authorization. On January 3, 2006, Petitioner went before the Honorable Ricardo Hinojosa, United States District Court Judge for the Southern District of Texas, and there and then pled guilty to the charge brought against him by the Department of Homeland Security (DHS). On October 26, 2006, more than 10 months after pleading guilty and more than a year after his arrest, Petitioner was again taken before the Honorable Ricardo Hinojosa, and there and then was sentenced to 'time-served' in federal detention. Petitioner learned that he was to be deported once more, wherefore Petitioner then requested an interview with an ICE agent for 'credible fear'. On October 31, 2006, the Petitioner was once again placed in Executive Detention by ICE and brought to the ICE detention center at Los Fresnos, Texas.

16. On December 1, 2006, Mr. Tracey Puechel, from the ICE office in Miami, Florida, contacted Petitioner to inform him that his interview for 'credible fear' would occur in "two to three weeks". In that conversation, Petitioner informed Mr. Puechel that he wanted to submit a 'Freedom of Information Act' request to find out what became of his 2 applications for naturalization from 1977 & 1978. Mr. Puechel then informed Petitioner that he could check that on his computer and after doing so, Mr. Puechel informed the Petitioner that he had self-cancelled his final interview for his naturalization, twice; the first one on December 13, 1978 and the second one on July 6, 1979. Petitioner never knew of these scheduled interviews much less cancel these interviews. Finally, on February 14, 2007, after waiting for more than three months for the 'credible fear' interview, Mr. John Eliot, an Interview Officer from the Houston, Texas, ICE office, came to the ICE detention center at Los Fresnos, to interview Petitioner in person. During that interview, Petitioner asked, and Mr. Eliot confirmed what Mr. Puechel had said to the Petitioner on December 1, 2006. Mr. Eliot said that the word 'cancel' was handwritten across the interview sheet for his final naturalization interview from either 1978 or 1979. Petitioner reiterates; at no time was he ever notified of any scheduled interviews for his applications for naturalization, nor did Petitioner ever

cancel any such interviews scheduled by the INS for his applications for naturalization, as asserted, supra.

17. Since Petitioner's detention at the Port Isabel Detention Center in Los Fresnos, he has again re-applied for naturalization, this time under INA §329. On January 10, 2007, Petitioner received confirmation from the Bureau of Citizenship and Immigration Services (BCIS) that on December 26, 2006; they had received and were processing his N-400 application.

## ISSUES PRESENTED

18. Title 8 U.S.C. § 1101 (a)(3) defines an alien as "any person not a citizen or national of the United States." In turn, the INA defines a "national of the United States" as "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States." 8 U.S.C. § 1101(a)(22). Only aliens are removable, 8 U.S.C. § 1227.

19. Petitioner strongly believes that he should be accorded the status of citizen or national of the United States, Petitioner respectfully asks this Honorable Court for a clarification on his claims as to whether he is entitled to the status of citizen or national of the United States. In the realm of Immigration law and in the sphere of American society, Petitioner firmly believes that he is a citizen or national of the United States and not an 'alien' and should therefore be deemed "not deportable", pursuant to applicable laws, treaties, statutes and the Constitution of the United States of America.

20. Petitioner's position is best defined in several case laws decided by Courts of the United States. The first one is: *LEE v. ASHCROFT,* **216 F. Supp. 2d 51 (E.D.N.Y. 2002)**. The Court held that: "Various courts have considered the modern application of the term "national," without agreeing on the precise qualifications for according that status. Long-term residency and a personal claim or beliefs that one "owes allegiance" are clearly insufficient standing alone". *See Oliver,* 517 F.2d at 427 ("The concept of 'owing allegiance' for purposes of nationality is not so easily satisfied or indeed

understood"); *see also United States v. Sotelo*, 109 F.3d 1446, 1448 (9th Cir. 1997) (Alien's subjective belief that he owed allegiance to the United States was insufficient to establish that he was a national.); *Sierra-Reyes v. INS*, 585 F.2d 762, 764 (5th Cir. 1978) (Alien's claim to citizenship based on long residency in the United States and lack of allegiance to any other country were insufficient to confer status of national where individual had never filed a petition for naturalization.); *Shittu v. Elwood*, 204 F. Supp. 2d 876, 2002 WL 992036, at *3 (E.D.Pa. 2002) ("Long-term residency alone does not suffice to confer the status of 'national.' There must be some objective demonstration of permanent allegiance."); *Carreon-Hernandez v. Levi*, 409 F. Supp. 1208, 1210 (D. Minn.) (finding petitioner deportable where he had lived and worked in the United States for over 20 years and was married to a U.S. citizen and the parent of a U.S. citizen child, but had never gone through the naturalization process), *aff'd* 543 F.2d 637 (8th Cir. 1976). At a minimum, it appears that to qualify as a national, an individual must have demonstrated his or her allegiance by applying for citizenship. *Hughes v. Ashcroft*, 255 F.3d at 756; *see also Oliver*, 517 F.2d at 428 (finding that the petitioner did not qualify as a national because she continued to owe allegiance to Canada and she had not chosen to renounce that allegiance by naturalizing); *United States v. Morin*, 80 F.3d 124, 126 (4th Cir. 1996) ("An application for citizenship is the most compelling evidence of permanent allegiance to the United States short of citizenship itself.") The Supreme Court has also identified the application for citizenship as a step in the process_of acquiring the full rights of citizenship. *Johnson v. Eisentranger*, 339 U.S. 763, 769-770, 94 L. Ed. 1255, 70 S. Ct. 936 (1950) ("The alien, to whom the United States has been traditionally hospitable, has been accorded a generous and ascending scale of rights as he increases his identity with our society. Mere presence in our country creates an implied assurance of safe conduct and gives him certain rights; they become more extensive and secure when he makes preliminary declaration of intention to become a citizen, and they expand to those of full citizenship upon naturalization.")"

21. Additionally, the Court of Appeals for the 4th Circuit, in ***United States v. Morin*, 80 F 3.d 124, 126 (4th Cir. 1996)** went precisely to the core of what the Petitioner is requesting of this Honorable Court. The 4th Circuit Court of appeals ruled: "the murder of

"a national of the United States, while such national is outside the United States" is a federal offense punishable "by death or imprisonment for any term of years or for life." 18 U.S.C.§ 2332(a). Morin seeks to escape this offense by alleging that Dr. Soto was not a national of the United States, but rather, a Mexican citizen. Citizenship, however, is not the sine qua non of "nationality." A "national of the United States" may also be "a person who, though not a citizen of the United States, owes permanent allegiance to the United States." 8 U.S.C. § 1101 (a)(22). The district court found that because Dr. Soto was a permanent alien of the United States who had applied for United States citizenship, he was indeed "a national of the United States." We agree - an application for citizenship is the most compelling evidence of permanent allegiance to the United States short of citizenship itself. Accordingly, had Morin succeeded in killing Dr. Soto, the murder would have violated § 2332(a)".

22. Petitioner strongly believes that he has rightfully earned the status of either citizen or national of the United States. The Petitioner respectfully requests that this Honorable Court confer the status of either citizen or national unto the Petitioner. Petitioner reiterates and adds emphasis to the following facts in his quest for the status of either citizen or national of the United States of America:

23. Petitioner has demonstrated he owes allegiance to the United States of America by having enlisted in, and served in the United States military. Petitioner swore an oath to defend the United States and the United States Constitution against all enemies, foreign and domestic. Petitioner also signed an affidavit of his oath along with his enlistment documents to (validate, justify, legalize, verify and/or confirm) his allegiance to the United States of America. Therefore, by having done these acts, by swearing to defend the United States and by signing the affidavit along with his enlistment documents, Petitioner has clearly demonstrated that he owes his allegiance to the United States.

24. Petitioner has further demonstrated that he owes allegiance to the United States by having exhibited, not once and not twice, but on least three separate occasions, his willingness to become a citizen of the United States. First while he was in the military,

and then with the two separate applications for naturalization in 1978 and 1979, and now, as most recent as his application from December of 2006.

25. Petitioner has lived his entire life, practically, in the United States of America. Petitioner was just an infant (15 months), when he was brought to the United States by his parents and grandparents. Petitioner knows of no other social setting and of no other culture, only that which he has lived in the United States.

26. Since his first day of school back in 1960, Petitioner recited a daily oath of allegiance to the United States. Petitioner Pledged Allegiance to the United States of America every day he attended school, both elementary and high school (1960 – 1971). Petitioner has been educated in the history, the laws, the Constitution, and the language of the United States. Petitioner never attended school in his native country and knows nothing about the history, the laws, the Constitution of Mexico and he knows only the basics of the language.

27. Petitioner repeats and reiterates all facts contained in paragraphs 1-26 above as if fully set forth herein. Altogether, with Petitioner's length of residence in the United States, his military service to the United States government, and with his numerous attempts at becoming a naturalized citizen of the United States, Petitioner firmly believes that he has demonstrated time and again his substantial connection to this country and that he owes his allegiance to the United States of America. Therefore, with Petitioner having respectfully presented the rulings and opinions of several Courts; in the interest of Justice; fairness; to safeguard the Petitioner's rights; and with this Honorable Court being an integral part of ensuring due process of law pursuant to the Fifth Amendment to the Constitution of the United States of America, the Petitioner respectfully asks this Honorable Court to weigh carefully all facts and issues raised in this petition and to apply the Due Process Right pursuant to the Fifth Amendment and the Equal Protection Clause pursuant to the Fourteenth Amendment to the United States Constitution, and consider all facts and issues presented without prejudice.

**PRAYER FOR RELIEF**

28. Petitioner prays that this Court finds Respondents have Petitioner detained in violation of the laws, treaties and the Constitution of the United States of America, and orders the release of Petitioner from detention.

29. Petitioner prays that this Court vacates any and all orders of deportation and remands this case to the proper Immigration Court for appropriate disposition of his case.

30. Therefore, Petitioner prays that a Writ of Habeas Corpus will be issued directly to Respondents, requiring them to show cause why Petitioner should not be discharged from the restraint of liberty now imposed upon him by the Respondents.

WHEREFORE, in light of the aforementioned facts and arguments raised herein, Petitioner prays that this Court grant the relief sought and any further relief as this Court deemed just, proper and equite under the circumstances. Petitioner respectfully asks this Honorable Court to interpret the foregoing liberally and not subject the Petitioner's petition for Writ of Habeas Corpus to the same standards that would apply to pleadings drafted by lawyers. *See e.g. Haines v. Kerner*, 404 U.S. 519, 520, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972) (per curiam); *Hughes v. Rome*, 449 U.S. 5, 9, 101 S. Ct. 173, 175, 66 L. Ed. 2d 163 (1980) (per curiam).

Dated: This 1 ˢᵗ day of April, 2007.

Respectfully submitted,

CARLOS JAIME TORRES CARDENAS, Pro se
A # 10-524-232
27991 Buena Vista Rd.
Los Fresnos, Texas 78566

# CERTIFICATE OF TRANSLATION

SUBJECT: BIRTH CERTIFICATE

PERSON CONCERNED: CARLOS JAIME TORRES CARDENAS

---

## UNITED STATES OF MEXICO

CIVIL REGISTRY                    CONTROL NO.
**3604816**

IN THE NAME OF THE FREE AND SOVEREIGN STATE OF: **NUEVO LEON,** AND AS THE ONLY OFFICIAL OF THE CIVIL REGISTRY OF THIS MUNICIPALITY OR DELEGATION, I CERTIFY THAT IN BOOK NO. **ONE** OF THE CIVIL REGISTRY THAT IS IN MY CHARGE, ON PAGE NO.: **27**, IS FOUND AND ESTABLISHED THAT CERTIFICATE NO.: **83**, DATED: **12ᵀᴴ OF FEBRUARY OF 1955,** WAS ENTERED BY THE FORMER OFFICIAL OF THE CIVIL REGISTRY: **C. ELIAS ANCER VITAR,** ON WHICH IS FOUND THE FOLLOWING INFORMATION: **GENERAL TERAN, NUEVO LEON (N.L.)**




## CERTIFICATE OF BIRTH

NAME:       CARLOS JAIME TORRES CARDENAS

DATE OF BIRTH:        12 OF AUGUST OG 1954                         TIME:       19:00

TYPE OF BIRTH:    ALIVE: X        DEAD:                    SEX:   MALE: X          FEMALE:

PLACE OF BIRTH:    HACIENDEA SAN JOAQUIN, GENERAL TERAN, NUEVO LEON

### PARENTS

NAME:   ISAAC TORRES                    NATIONALITY:   MEXICAN    AGE: 22 YEARS

NAME:   VIRGINIA CARDENAS                    NATIONALITY:   MEXICAN    AGE: 20 YEARS

### GRANDPARENTS

PATERNAL GRANDFATHER:  EDUARDO TORRES              NATIONALITY: - - - - - - - - - -

PATERNAL GRANDMOTHER:  JOSEFINA JIMENEZ            NATIONALITY: - - - - - - - - - -

MATERNAL GRANDFATHER:  AMADOR CARDENAS             NATIONALITY: - - - - - - - - - -

MATERNAL GRANDMOTHER: MARGARITA QUINTANILLA        NATIONALITY: - - - - - - - - - -

### WITNESSESS

NAME:   JOSE ESPARZA                    NATIONALITY:   MEXICAN    AGE:- - - YEARS

NAME:   GUADALUPE RODRIGUEZ                    NATIONALITY:   MEXICAN    AGE:- - - YEARS

**DISTINCT PERSON OF THE PARENTS WHO PRESENTED THE REGISTERED**

NAME:_____ RELATION:_____ AGE: ___YEARS

HIS CERTIFICATION IS WRITTEN IN COMPLIANCE WITH ARTICLE **46** OF THE CIVIL CODE VALID IN THE STATE IN: **GENERAL TERAN, NUEVO LEON** ON THE **8**[TH] DAY OF THE MONTH OF **MAY** OF **1998.**

**THE ONLY OFFICIAL OF THE CIVIL REGISTRY, I GIVE WITNESS**

**C. LIC. HUMBERTO RUBEN CAVAZOS GARCIA**_____
          NAME                                 SIGNATURE

BOTTOM RIGHT-HAND CORNER:
OFFICIAL SEAL OF THE CIVIL REGISTRY

# ESTADOS UNIDOS MEXICANOS

**REGISTRO CIVIL**

No. DE CONTROL

**3604816**

E.G.G.

EN NOMBRE DEL ESTADO LIBRE Y SOBERANO DE _____ **NUEVO LEON**
Y COMO OFICIAL _____ UNICO _____ DEL REGISTRO CIVIL DE ESTE MUNICIPIO O DELEGACION,
CERTIFICO: QUE EN EL LIBRO No. _____ UNO _____ DEL REGISTRO CIVIL QUE ES A MI CARGO,
EN LA FOJA No. ____ 27 _____ SE ENCUENTRA ASENTADA EL ACTA No. ____ 83 ____ DE FECHA
__ 12 DE FEBRERO DE 1955 _____ LEVANTADA POR EL C. OFICIAL ___ UNICO
DEL REGISTRO CIVIL _____ C. ELIAS ANCER VITAR
EN LA CUAL SE CONTIENEN LOS SIGUIENTES DATOS: GENERAL TERAN, N.L.,

## ACTA DE NACIMIENTO

NOMBRE _____ CARLOS JAIME TORRES CARDENAS

FECHA DE NACIMIENTO ____ 12 DE AGOSTO DE 1954 ____ HORA ___ 19.00

PRESENTADO: VIVO [X]  MUERTO [ ]  SEXO: MASCULINO [X]  FEMENINO [ ]

LUGAR DE NACIMIENTO ___ HACIENDA DE SAN JOAQUIN: GENERAL TERAN, N.L.,

COMPARECIO: EL PADRE [ ]  LA MADRE [X]  AMBOS [ ]  PERSONA DISTINTA [ ]  REGISTRADO [ ]

### PADRES

NOMBRE ____ ISAAC TORRES ____ NACIONALIDAD MEXICANO EDAD 22 AÑOS

NOMBRE ___ VIRGINIA CARDENAS ___ NACIONALIDAD MEXICANA EDAD 20 AÑOS

### ABUELOS

ABUELO PATERNO EDUARDO TORRES ____ NACIONALIDAD = = =

ABUELA PATERNA JOSEFINA JIMENEZ ____ NACIONALIDAD = = =

ABUELO MATERNO AMADOR CARDENAS ____ NACIONALIDAD = = =

ABUELA MATERNA MARGARITA QUINTANILLA ____ NACIONALIDAD = = =

### TESTIGOS

NOMBRE JOSE ESPARZA ____ NACIONALIDAD = = = EDAD = AÑOS

NOMBRE GUADALUPE RODRIGUEZ ____ NACIONALIDAD = = = EDAD = AÑOS

No. DE CERTIFICADO DE NACIMIENTO _____ C.U.R.P. _____

### PERSONA DISTINTA DE LOS PADRES QUE PRESENTA AL REGISTRADO

NOMBRE _____ PARENTESCO _____ EDAD _____ AÑOS

SE EXTIENDE ESTA CERTIFICACION, EN CUMPLIMIENTO DEL ARTICULO __ 46 __ DEL
CODIGO CIVIL VIGENTE EN EL ESTADO, EN GENERAL TERAN, NUEVO LEON
A LOS __ 8 __ DIAS DEL MES DE ___ MAYO ___ DE ___ 1998

EL C. OFICIAL UNICO DEL REGISTRO CIVIL, DOY FE

C. LIC. HUMBERTO RUBEN CAVAZOS GARCIA

**NOMBRE** | **FIRMA**

SELLO DE LA OFICIALIA
DEL REGISTRO CIVIL

GOBIERNO DEL ESTADO
DE NUEVO LEON
...CION DEL REGISTRO CIVIL
OFICIALIA PRIMERA
GRAL. TERAN, N.L.

EXHIBIT A

**EXHIBIT B**

# Certificate of Baptism

✝

**Church of**

St. Michael

Cuero, Texas

## This is to Certify

That _Josefina Jimenez_

Child of _José Jimenez_

and _Flora Salazar_

born in _De Witt Co., Texas_ on the

4 day of _June_ 1910 was **Baptized**

on the 29 day of _Oct._ 1910

According to the Rite of the Roman Catholic Church

by the Rev. _G. J. Hendrickx_

the Sponsors being _Pedro Ramirez_

and _Refugia Flores_ as appears from

the Baptismal Register of this Church.

Vol _5_ Page _25_ No. _349_

Dated _Jan. 1, 1966._

N.B. no annotations on record. _Wm. Johnson,_ Pastor.

CATHEDRAL CHURCH GOODS STORE          San Antonio, Texas



# City of McAllen

**STATE OF TEXAS**     **CERTIFICATE OF DEATH**     **STATE FILE NUMBER**

*Texas Department of Health — Bureau of Vital Statistics*

| 1 NAME OF DECEASED (a) FIRST | (b) MIDDLE | (c) LAST | (d) MAIDEN | 2 SEX | 3 DATE OF DEATH |
|---|---|---|---|---|---|
| ISAAC | | TORRES | ———— | MALE | APRIL 13, 1999 |

| 4 DATE OF BIRTH | 5 AGE (IN YEARS) | IF UNDER 1 YR. MO / DAYS | IF UNDER 1 DAY HOURS / MIN | 6 BIRTH PLACE (CITY & STATE OR FOREIGN COUNTRY) | 7 SOCIAL SECURITY NO |
|---|---|---|---|---|---|
| APRIL 5, 1932 | 67 | | | GENERAL TERAN N.L. MEXICO | 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 |

| 8 RACE | 9a WAS THE DECEDENT OF HISPANIC ORIGIN? | 9b IF YES, SPECIFY MEXICAN, CUBAN, PUERTO RICAN, ETC) | 10 WAS DECEDENT EVER IN U.S. ARMED FORCES? | 11. EDUCATION (SPECIFY HIGHEST GRADE COMPLETED, ELEM OR SECONDARY (0-12) COLLEGE (13-16, 17+) |
|---|---|---|---|---|
| CAUCASIAN | XX YES ☐ NO | MEXICAN | ☐ YES XX NO | 3rd |

| 12 MARITAL STATUS | 13. SURVIVING SPOUSE (IF WIFE, GIVE MAIDEN NAME) | 14a DECEDENT'S USUAL OCCUPATION | 14b KIND OF BUSINESS OR INDUSTRY |
|---|---|---|---|
| X MARRIED ☐ NEVER MARRIED ☐ WIDOWED ☐ DIVORCED | VIRGINIA CARDENAS | SEWAGE PLANT OPERATOR | CITY OF HOUSTON |

| 15a RESIDENCE STREET ADDRESS | | 15b CITY OR TOWN |
|---|---|---|
| 302 BERTHA | | MISSION |

| 15c COUNTY | 15d STATE | 15e ZIP CODE | 15f INSIDE CITY LIMITS |
|---|---|---|---|
| HIDALGO | TEXAS | 78572 | XX YES ☐ NO |

| 16 FATHER'S NAME | 17. MOTHER'S MAIDEN NAME |
|---|---|
| EDUARDO TORRES | JOSEFINA JIMENEZ |

18. PLACE OF DEATH (CHECK ONLY ONE)

HOSPITAL: X INPATIENT ☐ ER/OUTPATIENT ☐ DOA   OTHER: ☐ NURSING HOME ☐ RESIDENCE ☐ OTHER (SPECIFY)

| 19 COUNTY OF DEATH | 20. CITY OR TOWN OR OUTSIDE CITY LIMITS, GIVE PRECINCT NO.) | 21 NAME OF HOSPITAL OR INSTITUTION (If not in institution, show street address) |
|---|---|---|
| HIDALGO | MCALLEN | MCALLEN MEDICAL CENTER |

| 22 INFORMANT — SIGNATURE & RELATIONSHIP | 23. MAILING ADDRESS OF INFORMANT |
|---|---|
| *Virginia Torres*    WIFE | 302 BERTHA MISSION, TEXAS 78572 |

| 24 METHOD OF DISPOSITION | 25a PLACE OF DISPOSITION (NAME OF CEMETERY, CREMATORY OR OTHER PLACE) | 25b Section / Block / Lot / Space | 26 NAME & ADDRESS OF FUNERAL HOME |
|---|---|---|---|
| XX BURIAL ☐ CREMATION ☐ REMOVAL FROM STATE ☐ DONATION ☐ OTHER (SPECIFY) | VALLEY MEMORIAL GARDEN<br>MCALLEN, TEXAS | R<br>541<br>1 | FLORES FUNERAL HOME INC.<br>219 SOUTH MAYBERRY<br>MISSION, TEXAS 78572 |

| 27 SIGNATURE OF FUNERAL DIRECTOR OR PERSON ACTING AS SUCH | 28. DATE OF DISPOSITION |
|---|---|
| *Veronica Imelda Flores* | APRIL 16, 1999 |

30 CERTIFIER

X CERTIFYING PHYSICIAN — TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE TIME, DATE, AND PLACE, AND DUE TO THE CAUSE(S) AND MANNER AS STATED

☐ MEDICAL EXAMINER / ☐ JUSTICE OF THE PEACE — ON THE BASIS OF EXAMINATION AND/OR INVESTIGATION, IN MY OPINION, DEATH OCCURRED AT THE TIME, DATE, PLACE, AND DUE TO THE CAUSE(S) AND MANNER AS STATED

| 31 SIGNATURE & TITLE OF CERTIFIER | 32 DATE SIGNED MO / DAY / YEAR | 33 TIME OF DEATH |
|---|---|---|
| *[signature]* MD | | 4:03 a. M |

| 34 PRINTED NAME & ADDRESS OF CERTIFIER |
|---|
| SOCRATES A. GARRIGOS M.D.    501 N. WARE RD.    MCALLEN, TEXAS 78504 |

35 PART 1 ENTER THE DISEASES, INJURIES OR COMPLICATIONS THAT CAUSED THE DEATH DO NOT ENTER THE MODE OF DYING SUCH AS CARDIAC OR RESPIRATORY ARREST, SHOCK, OR HEART FAILURE LIST ONLY ONE CAUSE ON EACH LINE    Approximate Interval Between Onset and Death

IMMEDIATE CAUSE (Final disease or condition resulting in death) → a. Alcoholic Liver Disease

DUE TO (OR AS A LIKELY CONSEQUENCE OF):

b. ____

DUE TO (OR AS A LIKELY CONSEQUENCE OF):

c. ____

DUE TO (OR AS A LIKELY CONSEQUENCE OF):

Sequentially list conditions, if any, leading to immediate cause Enter UNDERLYING CAUSE (disease or injury that initiated events resulting in death) LAST

PART 2 OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN PART 1 (i.e. substance abuse, diabetes, smoking, etc )

| 36a. AUTOPSY? | 36b AUTOPSY FINDINGS AVAILABLE PRIOR TO COMPLETION OF CAUSE OF DEATH? |
|---|---|
| ☐ YES X NO | ☐ YES ☐ NO |

| 37 DID TOBACCO USE CONTRIBUTE TO DEATH | 38. DID ALCOHOL USE CONTRIBUTE TO DEATH | 39. WAS DECEDENT PREGNANT |
|---|---|---|
| ☐ YES ☐ PROBABLY ☐ NO X UNKNOWN | X YES ☐ PROBABLY ☐ NO ☐ UNKNOWN | AT TIME OF DEATH ☐ YES ☐ NO ☐ UNK<br>WITHIN LAST 12 MO ☐ YES ☐ NO ☐ UNK |

| 40 MANNER OF DEATH | 41a. DATE OF INJURY | 41b. TIME OF INJURY | 41c INJURY AT WORK | 41d. PLACE OF INJURY — AT HOME, FARM, STREET, FACTORY, OFFICE, ETC (SPECIFY) |
|---|---|---|---|---|
| X NATURAL ☐ ACCIDENT ☐ SUICIDE ☐ HOMICIDE ☐ PENDING INVESTIGATION ☐ COULD NOT BE DETERMINED | | M | ☐ YES ☐ NO | |
| | 41e LOCATION (STREET AND NUMBER, CITY OR TOWN, STATE) | | | |
| | 41f DESCRIBE HOW INJURY OCCURRED | | | |

| 42a. REGISTRAR FILE NO | 42b DATE RECEIVED BY LOCAL REGISTRAR | 42c SIGNATURE OF LOCAL REGISTRAR | |
|---|---|---|---|
| 02- 503 | MAY 04 1999 | | JANIE MADERO LOCAL REGISTRAR |

VS-112 REV. 9/95

67657

CERTIFIED COPY OF VITAL RECORDS

STATE OF TEXAS
COUNTY OF HIDALGO

DATE ISSUED
MAY 04 1999

This is a true certification of a vital record as recorded in this office, issued under Authority of Rule 54A, Article 4477, Revised Civil Statutes of Texas.

*Registrar/Deputy Registrar*

This copy not valid unless prepared on engraved border displaying seal and signature of Registrar.
LAMINATION MAY VOID CERTIFICATE.

American Bank Note Company    ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE



EXHIBIT C

# INA: ACT 301 - NATIONALS AND CITIZENS OF THE UNITED STATES AT BIRTH

Sec. 301. [8 U.S.C. 1401] The following shall be nationals and citizens of the United States at birth:

(a) a person born in the United States, and subject to the jurisdiction thereof;

(b) a person born in the United States to a member of an Indian, Eskimo, Aleutian, or other aboriginal tribe: Provided, That the granting of citizenship under this subsection shall not in any manner impair or otherwise affect the right of such person to tribal or other property;

(c) a person born outside of the United States and its outlying possessions of parents both of whom are citizens of the United States and one of whom has had a residence in the United States or one of its outlying possessions, prior to the birth of such person;

(d) a person born outside of the United States and its outlying possessions of parents one of whom is a citizen of the United States who has been physically present in the United States or one of its outlying possessions for a continuous period of one year prior to the birth of such person, and the other of whom is a national, but not a citizen of the United States;

(e) a person born in an outlying possession of the United States of parents one of whom is a citizen of the United States who has been physically present in the United States or one of its outlying possessions for a continuous period of one year at any time prior to the birth of such person;

(f) a person of unknown parentage found in the United States while under the age of five years, until shown, prior to his attaining the age of twenty-one years, not to have been born in the United States;

(g) a person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than five years, at least two of which were after attaining the age of fourteen years: Provided, That any periods of honorable service in the Armed Forces of the United States, or periods of employment with the United States Government or with an international organization as that term is defined in section 1 of the International Organizations Immunities Act (59 Stat. 669; 22 U.S.C. 288) by such citizen parent, or any periods during which such citizen parent is physically present abroad as the dependent unmarried son or daughter and a member of the household of a person (A) honorably serving with the Armed Forces of the United States, or (B) employed by the United States Government or an international organization as defined in section 1 of the International Organizations Immunities Act, may be included in order to satisfy the physical-presence requirement of this paragraph. This proviso shall be applicable to persons born on or after December 24, 1952, to the same extent as if it had become effective in its present form on that date; and

(h) a person born before noon (Eastern Standard Time) May 24, 1934, outside the limits and jurisdiction of the United States of an alien father and a mother who is a citizen of the United States who, prior to the birth of such person, had resided in the United States. 302 persons born in Puerto Rico on or after April 11, 1899



IMPORTANT RECORD
SAFEGUARD IT

| 1. LAST NAME-FIRST NAME-MIDDLE NAME | | 2. SEA | 3. SOCIAL SECURITY NUMBER | | | 4. DATE OF BIRTH | YEAR | MONTH | DAY |
|---|---|---|---|---|---|---|---|---|---|
| TORRES CARLOS JAIME | | M | 568 | 80 | 8443 | | 54 | 08 | 12 |

| 5. DEPARTMENT, COMPONENT AND BRANCH OR CLASS | | | 6a. GRADE RATE OR RANK | 6. PAY GRADE | 7. DATE OF RANK | YEAR | MONTH | DAY |
|---|---|---|---|---|---|---|---|---|
| ARMY | RA | | SP4 | E4 | | 74 | 03 | 01 |

| 8a. SELECTIVE SERVICE NUMBER | 8. SELECTIVE SERVICE LOCAL BOARD NUMBER, CITY, STATE AND ZIP CODE | c. HOME OF RECORD AT TIME OF ENTRY INTO ACTIVE SERVICE (Street, RFD, City, State and ZIP Code) |
|---|---|---|
| DNA | DNA | 6810 E Acampo Road Acampo, CA 95220 |

| 9a. TYPE OF SEPARATION | b. STATION OR INSTALLATION AT WHICH EFFECTED |
|---|---|
| Relief from active duty | Fort Bragg, NC 28307 |

| | | c. EFFECTIVE DATE | YEAR | MONTH | DAY |
|---|---|---|---|---|---|
| | | | 76 | 09 | 03 |

| 10. CHARACTER OF SERVICE | d. TYPE OF CERTIFICATE ISSUED |
|---|---|
| HONORABLE | DNA |

| 11. LAST DUTY ASSIGNMENT AND MAJOR COMMAND | 12. COMMAND TO WHICH TRANSFERRED |
|---|---|
| B Btry 1/73d FA    FORSCOM | USAR CON GP (Reinf) RCPAC, 9700 Page Blvd, St. Louis, MO 63132 |

| 13. TERMINAL DATE OF RESERVE/MSS OBLIGATION | | | 14. PLACE OF ENTRY INTO CURRENT ACTIVE SERVICE (City, State and ZIP Code) | 15. DATE ENTERED ACTIVE DUTY THIS PERIOD | | |
|---|---|---|---|---|---|---|
| YEAR | MONTH | DAY | | YEAR | MONTH | DAY |
| 78 | 08 | 14 | Oakland, CA 94612 | 72 | 08 | 15 |

| 16a. PRIMARY SPECIALTY NUMBER AND TITLE | b. RELATED CIVILIAN OCCUPATION AND D.O.T. NUMBER | 18. RECORD OF SERVICE | YEARS | MONTHS | DAYS |
|---|---|---|---|---|---|
| 13B10 FA Crewmn 740429/7502/125 | DNA | (a) NET ACTIVE SERVICE THIS PERIOD | 3 | 11 | 27 |
| | | (b) PRIOR ACTIVE SERVICE | 0 | 0 | 0 |
| 17a. SECONDARY SPECIALTY NUMBER AND TITLE | b. RELATED CIVILIAN OCCUPATION AND D.O.T. NUMBER | (c) TOTAL ACTIVE SERVICE (a+b) | 3 | 11 | 27 |
| | | (d) PRIOR INACTIVE SERVICE | 0 | 0 | 0 |
| DNA | DNA | (e) TOTAL SERVICE FOR PAY (c+d) | 3 | 11 | 27 |
| | | (f) FOREIGN AND/OR SEA SERVICE THIS PERIOD | 0 | 0 | 0 |

| 19. INDOCHINA OR KOREA SERVICE SINCE AUGUST 5, 1964 | 20. HIGHEST EDUCATION LEVEL SUCCESSFULLY COMPLETED (In Years) |
|---|---|
| ☐ YES  ☒ NO | SECONDARY/HIGH SCHOOL 12 YRS (1-12 grades)   COLLEGE 0 YRS |

| 21. TIME LOST (Preceding Two Yrs.) | 22. DAYS ACCRUED LEAVE PAID | 23. SERVICEMEN'S GROUP LIFE INSURANCE COVERAGE | 24. DISABILITY SEVERANCE PAY | 25. PERSONNEL SECURITY INVESTIGATION | |
|---|---|---|---|---|---|
| | | | | a. TYPE | b. DATE COMPLETED |
| 23 Days | 18 | ☐ $15,000 ☐ $5,000 X $20,000 ☐ $10,000 ☐ NONE | ☐ NO ☐ YES DNA AMOUNT | DNA | DNA |

| 26. DECORATIONS, MEDALS, BADGES, COMMENDATIONS, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED |
|---|
| National Defense Service Medal, Expert Badge M-16, Driver's Badge |

| 27. REMARKS |
|---|
| Individual request a copy of DD Form 214 *C.J.T.* |
| Item 21:  23 days lost under Title 10 USC 972 *C.J.T.* |
| Truck Driver's Crs |

| 28. MAILING ADDRESS AFTER SEPARATION (Street, RFD, City, County, State and ZIP Code) | 29. SIGNATURE OF PERSON BEING SEPARATED |
|---|---|
| P. O. Box 144 Acampo, CA 95220 | *Carlos J. Torres* |

| 30. TYPED NAME, GRADE AND TITLE OF AUTHORIZING OFFICER | 31. SIGNATURE OF OFFICER AUTHORIZED TO SIGN |
|---|---|
| B. J. ANTHONY, CPT AGC, ASST AG | *B. J. Anthony* |

DD FORM 214
1 NOV 72

PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE

THIS IS AN IMPORTANT RECORD SAFEGUARD IT.

REPORT OF SEPARATION FROM ACTIVE DUTY

EXHIBIT F



# CERTIFICATION OF VITAL RECORD

## CITY OF HARLINGEN
## BUREAU OF VITAL STATISTICS

STATE OF TEXAS     CERTIFICATE OF DEATH     STATE FILE NUMBER

*(left margin, vertical text)* Bureau of Vital Statistics • Texas Department of Health

| 1 NAME OF DECEASED (a) FIRST | (b) MIDDLE | (c) LAST | (d) MAIDEN | 2 SEX | 3 DATE OF DEATH |
|---|---|---|---|---|---|
| Oscar | Noel | Torres | | Male | Nov. 5, 1998 |

| 4 DATE OF BIRTH | 5 AGE (IN YEARS) | IF UNDER 1 YR — MO / DAYS | IF UNDER 1 DAY — HOURS / MIN | 6 BIRTH PLACE (CITY & STATE OR FOREIGN COUNTRY) | 7 SOCIAL SECURITY NO |
|---|---|---|---|---|---|
| Nov. 26, 1960 | 37 | | | Lodi, California | 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 |

| 8 RACE | 9a WAS THE DECEDENT OF HISPANIC ORIGIN? | 9b IF YES, SPECIFY MEXICAN, CUBAN, PUERTO RICAN, ETC.) | 10 WAS DECEDENT EVER IN U.S. ARMED FORCES? | 11 EDUCATION (SPECIFY HIGHEST GRADE COMPLETED, ELEM OR SECONDARY (0-12) COLLEGE (13-16 17+)) |
|---|---|---|---|---|
| Caucasian | ☒ YES ☐ NO | Mexican | ☐ YES ☒ NO | 12 |

| 12 MARITAL STATUS | 13 SURVIVING SPOUSE (IF WIFE, GIVE MAIDEN NAME) | 14a. DECEDENT'S USUAL OCCUPATION | 14b. KIND OF BUSINESS OR INDUSTRY |
|---|---|---|---|
| ☐ MARRIED ☒ NEVER MARRIED ☐ WIDOWED ☐ DIVORCED | | Installer | Countertops |

| 15a. RESIDENCE STREET ADDRESS | | 15b. CITY OR TOWN |
|---|---|---|
| 302 Bertha Street | | Mission |

| 15c. COUNTY | 15d. STATE | 15e. ZIP CODE | 15f INSIDE CITY LIMITS |
|---|---|---|---|
| Hidalgo | Texas | 78572 | ☒ YES ☐ NO |

| 16 FATHER'S NAME | 17 MOTHER'S MAIDEN NAME |
|---|---|
| Isaac Torres Sr. | Virginia Cardenas |

18 PLACE OF DEATH (CHECK ONLY ONE)

HOSPITAL: ☐ INPATIENT ☒ ER/OUTPATIENT ☐ DOA   OTHER: ☐ NURSING HOME ☐ RESIDENCE ☐ OTHER (SPECIFY)

| 19 COUNTY OF DEATH | 20 CITY OR TOWN (IF OUTSIDE CITY LIMITS, GIVE PRECINCT NO.) | 21 NAME OF HOSPITAL OR INSTITUTION (If not in institution, show street address) |
|---|---|---|
| Cameron | Harlingen | Valley Baptist Medical Center |

| 22 INFORMANT — SIGNATURE & RELATIONSHIP | 23 MAILING ADDRESS OF INFORMANT |
|---|---|
| Carlos Jaime Torres - Brother | 302 Bertha St. Mission, TX 78572 |

| 24 METHOD OF DISPOSITION | 25a. PLACE OF DISPOSITION (NAME OF CEMETERY, CREMATORY OR OTHER PLACE) | 25b | 26 NAME & ADDRESS OF FUNERAL HOME |
|---|---|---|---|
| ☒ BURIAL ☐ CREMATION ☐ REMOVAL FROM STATE ☐ DONATION ☐ OTHER (SPECIFY) | Valley Memorial | Section R, Block, Lot 543, Space 1, Unknown ☐ | Rivera Funeral Home 1813 N. Conway Mission, TX 78572 |

| 25c. LOCATION (CITY, STATE) | 27 SIGNATURE OF FUNERAL DIRECTOR OR PERSON ACTING AS SUCH | 28 DATE OF DISPOSITION |
|---|---|---|
| Mc Allen, Texas | Ralph Torres #4910 | Nov.9,1998 |

30. CERTIFIER

☐ CERTIFYING PHYSICIAN   TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE TIME, DATE, AND PLACE, AND DUE TO THE CAUSE(S) AND MANNER AS STATED.

☐ MEDICAL EXAMINER / ☐ JUSTICE OF THE PEACE   ON THE BASIS OF EXAMINATION AND/OR INVESTIGATION, IN MY OPINION, DEATH OCCURRED AT THE TIME, DATE, PLACE, AND DUE TO THE CAUSE(S) AND MANNER AS STATED

| 31 SIGNATURE & TITLE OF CERTIFIER | 32. DATE SIGNED — MO / DAY / YEAR | 33. TIME OF DEATH |
|---|---|---|
| *(signature)* JP | 12 / 09 / 98 | 11:17 A.M. |

34 PRINTED NAME & ADDRESS OF CERTIFIER

Oscar De La Fuente   181 W Rowson   San Benito, Tx 78586

*(left margin, vertical text)* WARNING: The penalty for knowingly making a false statement in this form can be 5-10 years in prison and a fine of up to $10,000 (Health and Safety Code, Sec. 195.003)

35. PART 1   ENTER THE DISEASES, INJURIES OR COMPLICATIONS THAT CAUSED THE DEATH. DO NOT ENTER THE MODE OF DYING SUCH AS CARDIAC OR RESPIRATORY ARREST, SHOCK, OR HEART FAILURE. LIST ONLY ONE CAUSE ON EACH LINE.   *Approximate Interval Between Onset and Death*

IMMEDIATE CAUSE (Final disease or condition resulting in death) → a. Massive, hypertrophic cardiomyopathy, with : Massive thickening DUE TO (OR AS A LIKELY CONSEQUENCE OF) of all cardiac chamber walls.

Sequentially list conditions, if any, leading to immediate cause. Enter UNDERLYING CAUSE (disease or injury that initiated events resulting in death) LAST

b. Assymetric, increased thickening of upper part of intraventricular septum. DUE TO (OR AS A LIKELY CONSEQUENCE OF):

c. Widespread myocardial interstitial fibrosis. DUE TO (OR AS A LIKELY CONSEQUENCE OF):

d. Marked dilation of both cardiac atria.

| PART 2 OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN PART 1 (i.e., substance abuse, diabetes, smoking, etc.) | 36a. AUTOPSY? | 36b. AUTOPSY FINDINGS AVAILABLE PRIOR TO COMPLETION OF CAUSE OF DEATH? |
|---|---|---|
| | ☒ YES ☐ NO | ☒ YES ☐ NO |

| 37. DID TOBACCO USE CONTRIBUTE TO DEATH | 38 DID ALCOHOL USE CONTRIBUTE TO DEATH | 39. WAS DECEDENT PREGNANT |
|---|---|---|
| ☐ YES ☐ PROBABLY ☐ NO ☒ UNKNOWN | ☐ YES ☐ PROBABLY ☐ NO ☒ UNKNOWN | AT TIME OF DEATH ☐ YES ☒ NO ☐ UNK   WITHIN LAST 17 MO ☐ YES ☒ NO ☐ UNK |

| 40. MANNER OF DEATH | 41a. DATE OF INJURY | 41b. TIME OF INJURY | 41c. INJURY AT WORK | 41d. PLACE OF INJURY — AT HOME, FARM, STREET, FACTORY, OFFICE, ETC. (SPECIFY) |
|---|---|---|---|---|
| ☒ NATURAL ☐ ACCIDENT ☐ SUICIDE ☐ HOMICIDE ☐ PENDING INVESTIGATION ☐ COULD NOT BE DETERMINED | | M. | ☐ YES ☐ NO | |

41e LOCATION (STREET AND NUMBER, CITY OR TOWN, STATE)

41f DESCRIBE HOW INJURY OCCURRED

| 42a. REGISTRAR FILE NO. | 42b DATE RECEIVED BY LOCAL REGISTRAR | 42c. SIGNATURE OF LOCAL REGISTRAR |
|---|---|---|
| 03-788 | 12/29/98 | Belia Zavala by *(signature)* |

VS-112 REV. 9/95

*(left margin, large handwritten)* EXHIBIT G

00157

STATE OF TEXAS }
COUNTY OF CAMERON }   DATE ISSUED 01-05-99

This is a true and correct certification of the original record as recorded in this office, issued under Authority of Sec 191.051, Health and Safety Code

*(signature)* Belia Zavala

LOCAL REGISTRAR/DEPUTY

  

DO NOT ACCEPT UNLESS PREPARED ON SECURITY PAPER WITH ENGRAVED BORDER DISPLAYING THE CITY OF HARLINGEN SEAL AND SIGNATURE OF THE REGISTRAR NOT VALID IF PHOTOCOPIED.

**WARNING: IT IS ILLEGAL TO DUPLICATE THIS COPY.**